

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00098-CR

_____


CURTIS LEO WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 0819904



Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Curtis Leo Williams, proceeding pro se, appeals his conviction for possession of more than four grams but less than 200 grams of a controlled substance (cocaine), a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2010). The State alleged two prior felony convictions, which elevated the punishment range to not less than twenty-five years' imprisonment and not more than ninety-nine years or life imprisonment. *See* Act of May 23, 1997, 75th Leg., R.S., ch. 665, 1997 Tex. Gen. Laws 2247, 2248 (amended 2011) (current version at TEX. PENAL CODE ANN. § 12.42 (West 2011)). In a companion case[1] (also decided today), Williams was convicted of the state-jail felony of possession of more than four ounces, but less than five pounds of marihuana, also a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(3) (West 2010). In relation to the other conviction, the State alleged two prior felony convictions, which elevated the punishment range to a second-degree felony. *See* Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 1, 1995 Tex. Gen. Laws 2734, 2735 (amended 2011) (current version at TEX. PENAL CODE ANN. § 12.42 (West 2011)).

The genesis of these charges arose as the result of a traffic stop during which the drugs were discovered. Williams, who had previously been declared indigent and had been appointed counsel, appeared at a pretrial hearing on February 26, 2010, wherein Williams appeared with recently-retained counsel, who requested a continuance. The trial court (after noting the case was

---

[1]*Williams v. State*, cause number 06-10-00099-CR.

2

over two years old, had been set for trial,[2] and was the only case on his docket that was ready to be tried) refused to grant Williams' oral motion for a continuance, whereupon retained counsel announced that he could not be prepared for trial and declined to appear further. The trial court then denied Williams' appointed counsel's oral motion to withdraw.[3]

Williams and his appointed counsel appeared on March 2, 2010, for jury selection, and Williams entered a plea of "not guilty." On March 9 and 10, Williams apparently deliberately absented himself and was tried in absentia. The jury found Williams guilty, found both enhancements to be true, and assessed punishment at sixty-three years' imprisonment for the possession of cocaine charge and seven years' imprisonment for the possession of marihuana charge. The trial court sentenced Williams consistent with the jury's assessment on May 26, 2010. Williams appealed and elected to proceed pro se on appeal.

---

[2]The record contains an appearance form dated December 31, 2008, which states the case was reset for February 26, 2009, with jury selection on March 2, 2009.

[3]Williams' appointed counsel later filed a written motion to withdraw, which he brought to the trial court's attention on March 2, 2010, immediately prior to voir dire.

**(1)     The Evidence Is Sufficient**

Williams challenges the legal and factual sufficiency[4] of the evidence.  To the best that we can discern,[5] Williams argues that the State failed to establish the controlled substance contains adulterants or dilutants and that some form of a material variance exists.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt.  *Brooks*, 323 S.W.3d at 912 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd).  Our rigorous legal sufficiency review focuses on the quality of the evidence presented.  *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the

---

[4]In *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010) (4-1-4 decision), a plurality of the Texas Court of Criminal Appeals abolished the factual sufficiency review established by *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), and its progeny.  The plurality and a concurring justice agreed that the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894–95, 912–13.

[5]In the section of his brief raising legal and factual sufficiency of the evidence, Williams raises additional issues not raised in his points of error.  In addition, Williams argues (1) the district attorney lacked authority to prosecute the offense, (2) the State failed to provide sufficient notice of enhancements, (3) the indictment is void, and (4) the trial court lacked subject-matter jurisdiction because the State failed to prove the offense occurred in Hopkins County.  These issues are multifarious and could be overruled as such.  *See Mays v. State*, 318 S.W.3d 368 (Tex. Crim. App. 2010) (a point of error is multifarious if it embraces more than one specific ground of error).  However, there is no merit to these complaints and, in the interest of justice, we will address these additional complaints later in this opinion.  We note that Williams raises a number of additional complaints in his reply brief which he did not raise in his appellant's brief.  Texas law is well established that new issues cannot be raised in a reply brief.  *State v. Sanchez*, 135 S.W.3d 698, 700 (Tex. App.—Dallas 2003), *aff'd*, 138 S.W.3d 324 (Tex. Crim. App. 2004).  We have not addressed any of the new issues raised in Williams' reply brief.

responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Williams argues, when the State "attempts to obtain conviction for Possession offense on theory that aggregate weight of controlled substance, including adulterants and dilutants, is over 4 grams it must first prove existance [sic] of any adulterants and then show that controlled substance weighs more than 4 grams." In support of this argument, Williams cites *Benoit v. State*, 561 S.W.2d 810, 815 (Tex. Crim. App. 1977), *overruled on other grounds by Harrison v. State*, 187 S.W.3d 429, 433 (Tex. Crim. App. 2005). In the thirty years since *Benoit*, the Texas Health and Safety Code has been amended.[6] The Texas Court of Criminal Appeals has noted "[u]nder the new Health and Safety Code definition, the State is no longer required to determine the amount of controlled substance and the amount of adulterant and dilutant that constitute the mixture." *Melton v. State*, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003). Rather, "[t]he State has to prove

---

[6]The Texas Health and Safety Code currently defines "controlled substance" as

> a substance, including a drug, an adulterant, and a dilutant, listed in Schedules I through V or Penalty Groups 1, 1-A, or 2 through 4. The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance.

TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (West 2010). The Code now defines "adulterant or dilutant" as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance." TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (West 2010).

5

only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight." *Id*.

Williams also alleges a material variance exists between the indictment and the evidence at trial. Williams does not attempt to specify the material variance he alleges. A variance exists when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *In re S.C.*, 229 S.W.3d 837, 841 (Tex. App.—Texarkana 2007, pet. denied).

The Texas Court of Criminal Appeals has held that evidentiary sufficiency should be measured against a "hypothetically correct" jury charge. *See Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). *Malik* controls "even in the absence of alleged jury charge error." *Gollihar*, 46 S.W.3d at 255. A "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. The hypothetically correct jury charge must include both (1) allegations that form an integral part of an essential element of the offense, including allegations that are statutorily alternative manner and means and (2) material variances. *Clinton v. State*, 327 S.W.3d 366, 368–69 (Tex. App.—Texarkana 2010, pet. granted); *see Gollihar*, 46 S.W.3d at 256. When determining whether a variance is material, we must consider two questions: "1) whether the indictment, as written, informed the defendant of the charge against

6

him or her sufficiently to allow such defendant to prepare an adequate defense at trial, and 2) whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime." *Mantooth v. State*, 269 S.W.3d 68, 76 (Tex. App.—Texarkana 2008, no pet.).

Our review has not revealed any variances concerning the charged offense between the indictment and the evidence presented at trial. The indictment in this case alleged that Williams did "intentionally and knowingly possess a controlled substance, namely, Cocaine, in an amount of four grams or more but less than 200 grams." In the companion case, the indictment alleged Williams did "intentionally and knowingly possess a useable quantity of Marihuana in an amount of five pounds or less but more than four ounces." The State introduced sufficient evidence establishing these allegations. Williams was the driver of the vehicle in which the illicit drugs were located and the vehicle's sole occupant.[7] The cocaine was discovered in a "clear, plastic baggie" which was "stuck between the console and the driver's seat." The marihuana was found in a Wal-Mart bag on the floorboard of the back seat. Clavian Cloud, III, a chemist with the Texas Department of Public Safety, identified the substances as cocaine and marihuana, testified the cocaine weighed 24.68 grams, and testified the marihuana weighed 2.88 pounds. A rational

---

[7]Williams signed the rental agreement for the vehicle. We note the State had the burden to prove Williams exercised control, custody, management, or care over the contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39) (West 2011). Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans*, 202 S.W.3d at 162. Presence or proximity to drugs, however, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care if the proof amounts to more than a strong suspicion or probability. *Id*. Although Williams has not challenged the evidence linking him to the contraband, the evidence of affirmative links would be sufficient if such a challenge had been made.

7

juror could have concluded, beyond a reasonable doubt, that Williams was guilty of possession of cocaine and possession of marihuana as alleged in the indictments.

**(2)     The Record Contains Sufficient Evidence to Support the Enhancements**

In our review of the enhancements, we noticed one of the prior Tennessee convictions has two different dates for entry of the judgment.   Count 1 and Count 2 of cause number IF7268 both state, "Comes the District Attorney General for the State and the defendant with counsel of record for entry of judgment.   On the  7  day of  FEB , 19  95 , the defendant . . . ," but the "Date of Entry of Judgment" is "3/23/95."   Williams has failed to provide this Court with any authority concerning whether, in Tennessee, the conviction occurs upon oral pronouncement or when the trial court signs the judgment.   Regardless, the variance, if any, would be immaterial.[8]   Both indictments allege identical enhancements as follows:

> And it is further presented in and to said Court that, prior to the commission of the aforesaid offense, on the 17th day of April, 2002, in Cause No. 2001-B-963, in the 20th Judicial District Criminal Court of Davidson County, Tennessee, the defendant was convicted of the felony of Possession With Intent To Sell; and on the 23rd Day of March, 1995, in Cause No. IF7268 Count 1, in the 20th Judicial District Criminal Court of Davidson County, Tennessee, the defendant was convicted of the felony of Possession Of Cocaine; and on the 23rd day of March, 1995, in Cause No. IF7268 Count 2, in the 20th Judicial District Criminal Court of Davidson County, Tennessee, the defendant was convicted of the felony of Possession Of Weapon.

---

[8]The Texas Court of Criminal Appeals has noted "*Malik*'s principles apply equally to the affirmative findings necessary to sustain the imposition of an enhanced punishment" and concluded the sufficiency of the evidence of the enhancements should be measured by the hypothetically correct jury charge for the enhancement.   *Young v. State*, 14 S.W.3d 748, 750 (Tex. Crim. App. 2000) (applying hypothetically correct jury charge to drug-free-zone enhancement); *see Sims v. State*, 84 S.W.3d 768, 779 (Tex. App.—Dallas 2002, pet. ref'd).

8

Regardless of whether one views a variance as a sufficiency of the evidence problem or as a notice-related problem, a variance that is not prejudicial to a defendant's "substantial rights" is immaterial. *Hart v. State*, 173 S.W.3d 131, 144 (Tex. App.—Texarkana 2005, no pet.). Whether a defendant's "substantial rights" have been prejudiced depends on: (1) whether the indictment, as written, informed the defendant of the charge against him sufficiently to allow such defendant to prepare an adequate defense at trial; and (2) whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Brown v. State*, 159 S.W.3d 703, 709 (Tex. App.—Texarkana 2004, pet. ref'd).

First, it is important to note it is not necessary to allege enhancement convictions with the same particularity which must be used in charging on the primary offense. *Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986); *Chavis v. State*, 177 S.W.3d 308, 312 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). With the exception of the date, the allegations identifying the offense, the cause number, and the court are correct. There is no evidence in this record (1) that the variance stated in the date on the enhancement conviction prevented Williams from identifying the conviction and preparing a defense or (2) that the variance would subject Williams to the risk of being prosecuted later for the same crime. The variance in the date, if any, is not material and, therefore, need not be included in the hypothetically correct jury charge. Under the hypothetically correct jury charge, the evidence is sufficient to support the jury's conclusion that the enhancement was true.

9

Williams also complains that the State failed to prove that the enhancement offenses (which were convictions in the State of Tennessee) were substantially similar to Texas offenses. We note that certain enhancements under Section 12.42(c)(2) require evidence that certain convictions not under the Texas Penal Code be "substantially similar" to specific offenses under the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 12.42(c)(2). Williams, though, was not charged under Section 12.42(c)(2). For the cocaine offense, the State alleged enhancements under former Section 12.42(d). *See* Act of May 23, 1997, 75th Leg., R.S., ch. 665, 1997 Tex. Gen. Laws 2247, 2248 (amended 2011) (current version at TEX. PENAL CODE ANN. § 12.42 (West 2011)). For the possession of marihuana offense, the State alleged enhancements under former Section 12.42(a)(2). *See* Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 1, 1995 Tex. Gen. Laws 2734, 2735 (amended 2011) (current version at TEX. PENAL CODE ANN. § 12.42 (West 2011)). For these sections, the relevant inquiry is whether another state chose to classify the offense as a felony. *See* TEX. PENAL CODE ANN. § 12.41 (West 2011);[9] *Tucker v. State*, 136 S.W.3d 699, 701 (Tex. App.—Texarkana 2004, no pet.).

The State established the prior offenses were felonies under Tennessee law. The State introduced "pen packets" from Tennessee, including the judgments for the convictions alleged. These judgments reflect that each of the convictions were considered felonies under Tennessee

---

[9]Section 12.41 has also been amended since Williams' conviction. Because the amendments are not relevant to this appeal, we will cite the current statute.

law.[10]   Robert Stidham, an Assistant Chief with the Sulphur Springs Police Department, testified that Williams' fingerprints matched the fingerprints on the pen packets.   The evidence was sufficient to support the enhancements.

**(3)     Section 12.46 Permits Multiple Use of Prior Felony Convictions**

Williams complains that the State cannot use the same prior felony convictions to enhance both counts, citing *Ex parte Williams*, 571 S.W.2d 26, 27 (Tex. Crim. App. 1978), *superseded by statute as stated in Ex parte Bonham*, 707 S.W.2d 107, 108 (Tex. Crim. App. 1986).[11]   In 1979, the Legislature enacted Section 12.46 of the Texas Penal Code, which provides, "The use of a conviction for enhancement purposes shall not preclude the subsequent use of such a conviction for enhancement purposes."   TEX. PENAL CODE ANN. § 12.46 (West 2011).   While under certain circumstances multiple use of enhancements may be limited, Williams has failed to provide this Court with authority that an exception to this general rule applies in this case and we are unaware of any such authority.   Williams' complaint is overruled.

**(4)     We Must Presume Venue Was Established**

Williams argues that the State failed to prove the charged offense occurred in Hopkins County.   Although Williams argues that this failure was jurisdictional, Williams' argument

---

[10]Williams claims, in his fourth point of error, that the judgments cannot be used because they do not conform to TEX. CODE CRIM. PROC. ANN. art. 42.01 (West Supp. 2010).   We are not aware of any authority—and Williams has not provided any—that a Tennessee judgment must conform to the form required for Texas judgments.

[11]In his reply brief, Williams additionally cites *Ramirez v. State*, 527 S.W.2d 542 (Tex. Crim. App. 1975), and *McWilliams v. State*, 782 S.W.2d 871 (Tex. Crim. App. 1990).   Both of these cases hold the State was prohibited from using appellant's prior conviction both as an essential element of the primary offense and to enhance his punishment. *McWilliams*, 782 S.W.2d at 876; *Ramirez*, 527 S.W.2d at 544.   Neither enhancement in this case was used as an essential element of the primary offense.   Both *McWilliams* and *Ramirez* are factually distinguishable from this case.

11

concerns venue and not the trial court's subject-matter jurisdiction. Venue is distinct from jurisdiction; jurisdiction is the authority or power conferred upon a court by the constitution and laws of Texas that allows a court to hear and try a case, whereas venue means the place where the case may be tried. *State v. Blankenship*, 170 S.W.3d 676, 681 (Tex. App.—Austin 2005, pet. ref'd). We begin by noting that venue is not an element of the offense. *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. [Panel Op.] 1981); *Blankenship*, 170 S.W.3d at 681. Thus, venue must be proved by only a preponderance of the evidence and is not required to be proved beyond a reasonable doubt. *See* TEX. CODE CRIM. PROC. ANN. art. 13.17 (West 2005); *Murphy v. State*, 112 S.W.3d 592, 604 (Tex. Crim. App. 2003). When reviewing venue, we view all of the evidence in the light most favorable to an affirmative venue finding and ask whether any rational trier of fact could have found by a preponderance of the evidence that venue was proved. *VanSchoyck v. State*, 189 S.W.3d 333, 336 (Tex. App.—Texarkana 2006, pet. ref'd).

Under Rule 44.2 of the Texas Rules of Appellate Procedure, we must presume venue has been proven in the trial court unless either the record affirmatively shows otherwise or if venue was disputed in the trial court. TEX. R. APP. P. 44.2(c)(1). A plea of "not guilty" is not sufficient to dispute venue in the trial court. *Holdridge v. State*, 707 S.W.2d 18, 20–21 (Tex. Crim. App. 1986) (en banc). Williams has not directed this Court to where venue was contested in the trial court. Our review of the record revealed neither any evidence affirmatively contesting venue, nor

12

did Williams request a directed verdict based on venue. Therefore, the issue is presumed proven at trial unless the record affirmatively shows otherwise. TEX. R. APP. P. 44.2(c)(1).

The record does not affirmatively show that venue was improper. When asked, "[W]here in Hopkins County [were you] working that night," Lieutenant Buddy Williams testified, "I was west of town." Lieutenant Williams later testified he was located on the "east-bound side of Interstate 30" near mile marker 115, which is "just the other side of Brashear" and explained by "other side" that he meant "West side of Brashear."[12] Lieutenant Williams testified he detained Williams at approximately mile marker 119. Because Williams did not challenge venue in the trial court and the record does not affirmatively show that venue does not exist in Hopkins County, we overrule Williams' argument that the State failed to establish venue.

**(5) The Indictment Is Not Void**

Williams argues that the indictment is void because it fails to allege essential elements of the offense. Other than the failure to allege the amount of the controlled substance in the mixture of controlled substance and adulterants and dilutants (which we have already noted is no longer required), Williams does not specify what essential element has been omitted. In support of his argument, Williams cites the following cases: *Benoit*, 561 S.W.2d at 814; *Labelle v. State*, 720 S.W.2d 101, 106 (Tex. Crim. App. 1986); *Ex parte Childress*, 732 S.W.2d 642, 643 (Tex. Crim.

---

[12]We could take judicial notice that Brashear is located in Western Hopkins County. *See Edwards v. State*, 427 S.W.2d 629, 633–34 (Tex. Crim. App. 1968) (taking judicial notice Breckenridge is in Stephens County). Because venue is presumed, it is not necessary for us to take judicial notice of this fact.

13

App. 1987); *Duron v. State*, 956 S.W.2d 547 (Tex. Crim. App. 1997). The State does not respond to this argument in its brief.[13]

Williams argues that the failure to allege an essential element of the offense is a defect of substance and renders the indictment void. In 1985, Texas voters approved an amendment to Section 12 of Article V to the Texas Constitution, which provides that the presentation of an indictment or information vests the trial court with jurisdiction over the case. *See* TEX. CONST. art. V, § 12; *see also Studer v. State*, 799 S.W.2d 263, 272 (Tex. Crim. App. 1990). A defendant waives any defect of form or substance in an information if an objection is not made before the date trial commences. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005); *Teal v. State*, 230 S.W.3d 172, 177 (Tex. Crim. App. 2007). By failing to object before trial, Williams has waived any defect of form or substance, if any exists.

We note that an instrument which is not an "indictment" under Article V, Section 12 to the Texas Constitution fails to vest the trial court with jurisdiction and can be raised for the first time on appeal. *See Teal*, 230 S.W.3d at 178; *Duron*, 956 S.W.2d at 555 (Womack, J., concurring); *Cook v. State*, 902 S.W.2d 471, 479–80 (Tex. Crim. App. 1995). The omission of an element of the offense, though, does not prevent the instrument from being a charging instrument. The charging instrument must charge: (1) a person (2) with the commission of an offense over which the trial court has subject-matter jurisdiction. *Teal*, 230 S.W.3d at 181. "[A] written instrument

---

[13]We note there are a number of arguments in this case to which the State did not respond. The State's failure to respond is to a certain extent understandable. These issues are multifarious. Further, Williams' briefing is extremely difficult to understand and inadequately explained.

14

is an indictment or information under the Constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective." *Duron*, 956 S.W.2d at 550–51. Because the information is sufficient to identify the penal statute under which the State intended to prosecute and that offense is one which the trial court had subject-matter jurisdiction,[14] the indictment is not void.

**(6)     The State Provided Sufficient Notice of Enhancements**

Williams also argues, in his second point of error, that the State failed to provide sufficient notice of the enhancements.   Williams argues that such notice is required to be provided in the indictment.   The State does not respond to this argument in its brief.

We first note that while the State is permitted to provide notice of enhancements in an indictment, the State is not required to do so.   *Brooks v. State*, 957 S.W.2d 30, 34 (Tex. Crim. App. 1997) ("enhancements must be pled in some form, but they need not be pled in the indictment").

Second, Williams was provided with notice of both enhancements in the indictment.   The indictment alleged as follows in pertinent part:

---

[14]In his second point of error, Williams argues the trial court lacked subject-matter jurisdiction because the indictment was void and the State failed to prove the offense occurred in Hopkins County.   In addition, Williams argues the district attorney's office lacked authority to prosecute him because the indictment was void and the State failed to prove the offense occurred in Hopkins County.   As discussed above, we must presume the State established Hopkins County was the correct venue.   We further note that the district court had subject-matter jurisdiction over the alleged felonies.   Because the indictment was not void, these arguments are also overruled.

15

And it is further presented in and to said Court that, prior to the commission of the aforesaid offense, on the <u>17th day of April, 2002</u>, in <u>Cause No. 2001-B-963</u>, in the <u>20th Judicial District</u> <u>Criminal Court</u> of <u>Davidson County, Tennessee</u>, the defendant was convicted of the felony of <u>Possession With Intent To Sell</u>; and on the <u>23rd Day of March, 1995</u>, in <u>Cause No. IF7268 Count 1</u>, in the <u>20th Judicial District</u> <u>Criminal Court</u> of <u>Davidson County, Tennessee</u>, the defendant was convicted of the felony of <u>Possession Of Cocaine</u>; and on the <u>23rd day of March, 1995</u>, in <u>Cause No. IF7268 Count 2</u>, in the <u>20th Judicial District</u> <u>Criminal Court</u> of <u>Davidson County, Tennessee</u>, the defendant was convicted of the felony of <u>Possession Of Weapon</u>.

At a pretrial hearing, the State made the following statement:

> [State]:  Well, I believe that there are -- while there is not an adequate delineation of the paragraphs there, that should actually be two separate paragraphs reflecting two separate pen trips.  And it's also referenced that way in the State's file, which has been provided to Mr. Loyd.

> THE COURT:  Okay.  Now let's make that clear.  What are you saying there?

> [State]:  That there are -- there should be two paragraphs there.  As written, it appears that it is one paragraph.  My point, Judge, was that, although it's not presented properly in the indictment, we intend to give Mr. Loyd notice that there are, in fact, two pen trips, which would make this fall into the habitual status.

While the better practice would be to provide notice of each enhancement in a separate paragraph, Williams has neither directed this Court to any authority requiring each enhancement to be alleged in a separate paragraph, nor are we aware of any such authority.  The indictment provided Williams with adequate notice of the enhancements.  Williams' argument is overruled.

**(7)    Any Error in Denying Williams' Motions for Continuance Is Not Preserved**

16

In his third point of error, Williams claims that the trial court erred in denying his motions for continuance. At the pretrial hearing on February 26, 2010, Williams' appointed trial counsel and Williams' recently-retained counsel orally[15] requested a continuance. Williams' appointed trial counsel argued that Williams refused to communicate with him, had expressed a desire to retain counsel, and had a right to be represented by retained counsel of his choice. Williams' retained counsel informed the court he had been recently retained, had not been informed the case had already been set for trial, and could not be ready for trial by the trial setting. The trial court (noting the case was over two years old, set for trial the following Monday, and the only case ready to be tried on his docket) refused to grant Williams' oral motion for a continuance and Williams' appointed counsel's oral motion to withdraw. Williams' appointed counsel later filed a written motion for continuance and a written motion to withdraw, brought the motions to the trial court's attention immediately prior to voir dire and secured another adverse ruling. Williams' appointed trial counsel renewed his requests on both motions immediately before trial and secured another adverse ruling. The State argues that this issue has not been preserved for appellate review.

Article 29.08 of the Texas Code of Criminal Procedure provides that "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." TEX. CODE CRIM. PROC. ANN. art. 29.08 (West 2006). The written motion for continuance, although signed by Williams and his trial counsel, is not sworn. When a motion for continuance is not sworn, error is not preserved for appellate review. *See Toliver v. State*, 279

---

[15]A motion for continuance must be in writing. TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006).

17

S.W.3d 391, 402 (Tex. App.—Texarkana 2009, pet. ref'd); *Johnson v. State*, 257 S.W.3d 778, 781 (Tex. App.—Texarkana 2008, pet. ref'd) (motion in writing, but not sworn); *see also Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999). The error, if any, is not preserved for appellate review.

**8)  The Trial Court Did Not Abuse Its Discretion in Denying Williams' Counsel's Motion to Withdraw**

Williams argues that he was denied his right to representation of counsel of his choice in violation of the Due Process Clause and his Sixth Amendment right to counsel. The Sixth and Fourteenth Amendments to the United States Constitution guarantee that a person brought to trial in any state or federal court shall be afforded the right to assistance of counsel. *Faretta v. California*, 422 U.S. 806, 807 (1975). We also note that a criminal defendant has a right to be represented by retained counsel of his choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Powell v. Alabama*, 287 U.S. 45, 53 (1932). We review a trial court's denial of a motion to withdraw for abuse of discretion. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000).

Williams' retained counsel was unequivocal that he could not be ready for trial unless a continuance was granted. The trial court was not required to delay the proceedings to accommodate Williams' tardy decision to retain counsel. We further note that the trial court did not bar Williams' retained counsel from participating in the trial; rather, appointed counsel was not

18

permitted to withdraw. At the hearing on counsel's motion to withdraw, the trial court, addressing Williams' recently-retained counsel, stated,

> And, so, Mr. Pink, I won't -- I mean, you can jump in the case if you want to, but I understand where you're coming from. However, I'm not going to allow this to defeat a court setting.
> I told you the last time we talked about this that I can't let it defeat a court setting, and, if you get an attorney, get them on board, and you've hired Mr. Pink at an impossibly late time.

Pink, Williams' recently-retained counsel, stated that he would be ineffective without a continuance and Pink did not thereafter appear for voir dire. Before voir dire began, the court discussed the matter. Williams informed the court, "Mr. Pink refused to substitute because he said today wasn't enough time to prepare."

The United States Supreme Court has recognized a number of limitations on the right to counsel of one's choice. A criminal defendant, while entitled to representation of a retained attorney of his choice, is not automatically entitled to a continuance.[16] Without a continuance, Williams' recently-retained counsel declined to represent Williams. The United States Supreme

---

[16]In reviewing the circumstances of each case to determine whether to grant a continuance, the trial court should weigh the following factors:

> (1) the length of the delay requested, (2) whether other continuances were requested and whether they were denied or granted, (3) the length of time in which the accused's counsel had to prepare for trial, (4) whether another competent attorney was prepared to try the case, (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court, (6) whether the delay is for legitimate or contrived reasons, (7) whether the case was complex or simple, (8) whether a denial of the motion resulted in some identifiable harm to the defendant, (9) the quality of legal representation actually provided.

*Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982).

19

Court has held the right to representation by counsel of one's choice does not include representation by an attorney who "declines to represent the defendant." *See Wheat v. United States*, 486 U.S. 153, 159 (1988). A trial court is not obligated to search for an attorney who meets with the approval of the accused when appointing counsel for an indigent defendant. *Webb v. State*, 533 S.W.2d 780, 784 n.3 (Tex. Crim. App. 1976). "In general, personality conflicts and disagreements concerning trial strategy do not form valid grounds for withdrawal." *Butler v. State*, 300 S.W.3d 474, 484–85 (Tex. App.—Texarkana 2009, pet. ref'd). The trial court did not abuse its discretion in denying Williams' trial counsel's motion to withdraw.

**(9)    The Trial Court Did Not Err in Denying the Motion for Directed Verdict**

In his fourth point of error,[17] Williams argues that the trial court erred in denying his motion for directed verdict. In reviewing the denial of a directed verdict, we look to the legal sufficiency of the evidence. *Todd v. State*, 242 S.W.3d 126, 136 (Tex. App.—Texarkana 2007, pet. ref'd); *Rice v. State*, 195 S.W.3d 876, 879 (Tex. App.—Dallas 2006, pet. ref'd); *Yarborough v. State*, 178 S.W.3d 895, 903 (Tex. App.—Texarkana 2005, pet. ref'd). As discussed above, the evidence is sufficient. The trial court did not err in denying the motion for directed verdict.

**(10)   The Trial Court Did Not Err in Denying Williams' Motion to Suppress**

---

[17]Williams also complains in his fourth point of error that the trial court erred in denying a jury instruction pursuant to TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). This point of error is multifarious and could be overruled as such. *See Mays*, 318 S.W.3d at 368.

20

In his fourth and fifth points of error, Williams complains that the trial court erred in denying his motion to suppress.[18] Although stating he "do[es] not argue the initial stop of 68 in a 65 was not probable cause for the stop in and of itself," Williams argues, "Officer Williams had no intention of filing or submitting a citation to Appellan[t]." To the best we are able to discern, Williams is arguing the initial detention was a pretext stop. Williams also claims that "the period of time from the time of the initial stop to going to retrieve the dog" was excessive and the officer was not "able to articulate some reason for the continued detention." Williams argues that the police officer's sole reason for bringing out the drug dog was Williams' denial of consent to a search. The State did not respond to this argument in its brief.

We review the trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review deferring to the trial court's determination of historical facts that

---

[18]We note that the in-car video recording introduced at trial has not been brought forward with the record on appeal. The court reporter has represented to this Court that the copy of the video introduced by the State was lost or destroyed. The record also contains a letter from Williams' trial counsel which states he has a copy of the video provided to him by the State in his files, does not believe the video is privileged, and would be "happy to make these available to [the court reporter] for reproduction, and with direction and instruction by the Court." The record, though, has not been supplemented with the video by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit. *See* TEX. R. APP. P. 34.6(f). Although Williams mentions the missing video in his brief, Williams has not complained about the absence of the video in the appellate record. Williams' brief quotes his attorney's argument at trial:

> The tape in and of itself and the Court is a little bit at a loss by not being able to see the tape. However, there are material issues that are presented [that] differentiate between the testimony the Court's heard and what actually occurred and obviously, the tape is best evidence of that particular indication.

At the time, the video had been admitted into evidence for the purposes of the motion to suppress. The record is not clear whether the video was played before the arguments on the motion to suppress. The trial court later admitted the video into evidence and it was played for the jury. We note that Williams fails to specify what these "material issues" are. Because Williams only raises legal arguments and does not complain about the missing video, we conclude the missing video is not "necessary" to our resolution of this appeal. *See* TEX. R. APP. P. 34.6(f)(3).

21

depend on credibility, but review de novo the trial court's application of the law. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). Generally, we review de novo determinations of probable cause or reasonable suspicion after granting deference to the trial court's determination of historical facts. *Guzman*, 955 S.W.2d at 87; *see Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

A defendant alleging a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). "A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant." *Id*. The burden then shifts to the State to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances. *Id*. at 672–73. An automobile may be searched without a warrant if there is probable cause to believe there is contraband or evidence of a crime concealed within the vehicle. *Chambers v. Maroney*, 399 U.S. 42, 48 (1970); *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008); *Hernandez v. State*, 867 S.W.2d 900, 907 (Tex. App.—Texarkana 1993, no pet.).

Texas does not follow the pretext stop doctrine recognized by some states. A "pretext stop" refers to "an 'objectively' valid stop for an allegedly improper reason" such as "desire to

22

investigate that individual for a different offense--i.e., an offense for which they do not have valid legal grounds to stop or arrest." *Garcia v. State*, 827 S.W.2d 937, 939–40 (Tex. Crim. App. 1992). The Texas Court of Criminal Appeals has rejected the pretext stop doctrine. *See Crittenden v. State*, 899 S.W.2d 668, 671 (Tex. Crim. App. 1995); *Garcia*, 827 S.W.2d 937.

The United States Supreme Court in *Terry v. Ohio* announced a two-pronged test for investigative detentions. 392 U.S. 1, 19–20 (1968). To determine the reasonableness of an investigative detention, the court must inquire: "(1) whether the officer's action was justified at its inception; and, (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); *see Terry*, 392 U.S. at 19–20.

The police had ample reasonable suspicion for the initial detention. Lieutenant Williams testified he detained Williams for "get[ing] over across the center stripe" and for speeding. Both actions are violations of Texas traffic laws. *See* TEX. TRANSP. CODE ANN. §§ 545.060, 545.351–.352 (West 2011). A law enforcement officer may lawfully stop and detain a person for a traffic violation committed in the presence of the officer. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992); *Zervos v. State*, 15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). Lieutenant Williams had sufficient reasonable suspicion for the initial detention.

The police also had ample reasonable suspicion to continue the detention past the initial stop. A search which is reasonable at its inception may violate the Fourth Amendment by virtue

of its intolerable intensity and scope. *Terry*, 392 U.S. at 9. An investigative detention must also be temporary and last no longer than is necessary to effectuate the initial purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Cisneros v. State*, 165 S.W.3d 853, 859 (Tex. App.—Texarkana 2005, no pet.). In a traffic stop, the police may ask for identification, a valid driver's license, proof of insurance, and may check for outstanding warrants. *Cisneros*, 165 S.W.3d at 859. During this time, consent to search a vehicle can be obtained. "[O]nce the reason for the stop has been satisfied, the stop may not be used as a fishing expedition for unrelated criminal activity." *Powell v. State*, 5 S.W.3d 369, 376 (Tex. App.—Texarkana 1999, pet. ref'd) (citing *Ohio v. Robinette*, 519 U.S. 33 (1996)); *see also Royer*, 460 U.S. at 497. It is the State's burden to demonstrate that the seizure it seeks to justify was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Royer*, 460 U.S. at 500.

Once the purpose of the initial detention has been investigated, any continued detention must be based on specific, articulable facts which, taken together with rational inferences from those facts, "would warrant a person of reasonable caution in the belief that a continued detention was justified, i.e., the detainee was or would soon be engaged in criminal activity." *Herrera v. State*, 80 S.W.3d 283, 288 (Tex. App.—Texarkana 2002, pet. ref'd); *Simpson v. State*, 29 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Lieutenant Williams testified to additional specific, articulable facts which justified the continued detention. During the investigation of the traffic offense, Lieutenant Williams noticed the odor of marihuana.

24

Lieutenant Williams testified Williams told him he had been in Dallas for several days, but the rental agreement specified the car had been rented the day before in Tennessee. Although Williams had claimed not to have any outstanding warrants, Lieutenant Williams conducted a warrant check which indicated an outstanding warrant for Williams' arrest in Tennessee.[19] Lieutenant Williams had sufficient reasonable suspicion to continue the detention.[20]

Finally, the police did not need probable cause to conduct a drug dog sniff. As noted above, the police had reasonable suspicion for the continued detention. Thus, Williams' claim that the only justification for bringing out the drug dog was his denial of consent is not supported by the record. The United States Supreme Court has held that an open air sniff by a drug dog is not a search within the meaning of the Fourth Amendment. *United States v. Place*, 462 U.S. 696 (1983). The trial court did not err in denying Williams' motion to suppress.

**(11)    Williams Was Not Entitled to an Article 38.23 Instruction**

In his fourth and fifth points of error, Williams argues he was entitled to a jury instruction on the admissibility of the contraband pursuant to TEX. CODE CRIM. PROC. ANN. art. 38.23. The State did not respond to this argument. Article 38.23(a) provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the

---

[19]Lieutenant Williams estimated he received the warrant check approximately ten minutes after the initial detention.

[20]The record does not establish the length of time following the conclusion of the warrant check and the drug dog sniff. However, since Lieutenant Williams had a drug dog with him in his vehicle, it is safe to assume the continued detention was rather brief.

25

United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX. CODE CRIM. PROC. ANN. art. 38.23.

An instruction pursuant to Article 38.23 is mandatory only when there is a factual dispute regarding the legality of the search. *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005); *Brooks v. State*, 642 S.W.2d 791, 799 (Tex. Crim. App. [Panel Op.] 1982); *Malone v. State*, 163 S.W.3d 785, 802 (Tex. App.—Texarkana 2005, pet. ref'd). To be entitled to the submission of a jury instruction under Article 38.23(a), a defendant must establish:

> (1) The evidence heard by the jury must raise an issue of fact;
> (2) The evidence on that fact must be affirmatively contested; and
> (3) That contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence.

*Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007) (citations omitted).

This case does not present any fact issue concerning the legality of the search. Williams' arguments are legal in nature—they concern whether the facts testified to by Lieutenant Williams are sufficient to constitute reasonable suspicion or probable cause. Further, Williams failed to introduce evidence affirmatively contesting a fact issue. The only evidence is the uncontradicted testimony of Lieutenant Williams. Williams was not entitled to an instruction. The trial court did not err.

26

**(12)     The Record Does Not Establish Ineffective Assistance of Counsel**

Williams' sixth point of error is that his trial counsel rendered ineffective assistance of counsel.   Williams alleges four complaints in the section of his brief addressing ineffective assistance:   (1) that his trial counsel was not prepared for trial, (2) that his counsel failed to object "to the biased jury and Judge," (3) that the prosecutor committed prosecutorial misconduct, and (4) that counsel failed to complain about the trial court's response to a jury note.   The State argues that the record does not establish deficient performance or harm.

We evaluate the effectiveness of counsel under the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984).   *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).   To prevail on his claim, Williams must show (1) his trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for trial counsel's errors, the result would have been different.   *See Strickland*, 466 U.S. at 687–88. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).   "It is well-settled that any claim of ineffective assistance must be firmly founded in the record."   *Flowers v. State*, 133 S.W.3d 853, 857 (Tex. App.—Beaumont 2004, no pet.); *see Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

Williams quotes statements made by trial counsel in connection with his motion for continuance and motion to withdraw.   Williams' trial counsel made these statements at the

27

pretrial hearing when he orally requested a motion for continuance and permission to withdraw, at the beginning of voir dire when trial counsel requested a ruling on his written motions, and at the beginning of trial, when trial counsel renewed his requests and secured another adverse ruling. Williams' trial counsel stated he was not ready for trial because Williams refused to communicate with him. Williams does not allege any conduct on the part of counsel that was deficient or the result of his trial counsel not being ready for trial. Assuming that counsel may not have been fully prepared for trial (although trial counsel's performance at trial indicates otherwise), Williams has failed to direct this Court to any deficient performance that may have taken place. The record does not establish that trial counsel was ineffective because he was not prepared for trial.

Williams argues that his trial counsel should have (but failed) to object "to the biased jury and Judge" when the following statements and questions by the trial court were made at the beginning of voir dire:

> THE COURT:  . . . . Now, some of you have known me a long time . . . .
>
> . . . .
>
> How many of you know Ms. Samantha Crouch?  She's the prosecutor in this case.  Several of you do; okay.  I'm going to ask you this question.  Do you have such a relationship with Ms. Crouch or her family that you would not be able to give a fair and impartial verdict to the defendant as well as the State in this case? If you could not, please raise your hand.
>
> I take it by your silence everyone could set that aside, that relationship, and give a fair and impartial verdict.
>
> How many of you know [trial counsel]?  No one does? . . . .

28

. . . .

And how many of you know Curtis Leo Williams?

I take it by your silence no one does. . . .

Williams fails to explain the means by which he perceives the above very routine questions and comments to be objectionable. Trial counsel could have reasonably concluded that any objection to the above questions would be overruled. The record does not establish trial counsel's performance was deficient for failing to object to the above statements and questions.

Williams argues that his trial counsel was ineffective because the prosecutor committed prosecutorial misconduct. Williams does not expand this complaint to explain what actions the prosecutor took that supposedly constituted misconduct and does not explain what action Williams' trial counsel should have taken in response.

Finally, Williams lodges a complaint about the trial court's response to a jury question. During punishment deliberations, the jury sent the trial court a note asking: "Are the charges going to be served concurrently or consecutively?" The trial court initially stated it was intending to respond that the sentences would be served concurrently. In his brief, Williams quotes the following objection made by his trial counsel:

> [Defense Counsel]: Judge, I'm not sure it's proper for you to make a comment on that if they're not supposed to be considering - - I mean, my preference would be that, "You're bound by the Charge and the instructions given you."

> . . . .

[Defense Counsel]:    I think you're always safe when you say, "You're bound by the instructions given you with the Charge," and I think that's a comment and will affect their determination of what the proper sentence would be in the case at hand.

The trial court stated it would respond:   "The Court cannot instruct you further.   Please continue your deliberations."   Williams fails to explain how the above conduct by his trial counsel was deficient.   The trial court, in essence, sustained Williams' trial counsel's objection.

Trial counsel's reasons for the objection do not appear in the record.   "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal."   *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002).   We believe the objection was based on legitimate trial strategy.   If the jury had been informed the sentences would run concurrently, the jury may have been inclined to assess a more severe sentence.   Trial counsel's objection was likely based on legitimate trial strategy.   The record does not establish trial counsel's performance was deficient.   Because the record does not support the claim of ineffective assistance, Williams' sixth point of error is overruled.

For the reasons stated, we affirm.

Bailey C. Moseley
Justice

Date Submitted:    October 17, 2011
Date Decided:    November 3, 2011

Publish