

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-11-00251-CR
_____


GUADALUPE RAMIREZ, III, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 196th Judicial District Court
Hunt County, Texas
Trial Court No. 26486



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Guadalupe Ramirez, III, was convicted by a jury of aggravated assault against a public servant. He pled true to the State's enhancement paragraph and received an enhanced sentence of fifty years' imprisonment. On appeal,[1] Ramirez argues that the evidence was insufficient to convict him[2] and that the trial court improperly commented on the weight of the evidence when instructing the jury on the law of the parties.[3] We affirm the trial court's judgment because we find: (1) no error in the court's proper instruction, and (2) the evidence legally sufficient to establish that Ramirez committed aggravated assault against a public servant.

Ramirez argues that the trial court erred in instructing the jury on the law of the parties under Section 7.02(b) of the Texas Penal Code. Ramirez' arguments are based on the theory that the evidence was legally insufficient for the jury to find Ramirez guilty, as a party, of assaulting Fernandez. In other words, he complains that because there was no evidence that Ramirez conspired with Vincent Thomas to engage in any crime, the instruction was improper. As explained below, because we find the evidence legally sufficient to convict Ramirez as a party,

---

[1]Ramirez also appeals from the following convictions entered on the same date: aggravated assault of Virginia Green with a deadly weapon (cause number 06-11-00252-CR); aggravated assault of Joanna Brock with a deadly weapon (cause number 06-11-00253-CR); aggravated assault of Darlene Moffitt Robinson with a deadly weapon (cause number 06-11-00254-CR); and aggravated robbery with a deadly weapon (cause number 06-11-00255-CR). The complete factual background giving rise to all of these convictions is the same, and is set forth in our opinion of this date in cause number 06-11-00255-CR. Therefore, this opinion only discusses the facts necessary to decide this opinion.

[2]In a separate point of error, Ramirez argues that the court erred in overruling his motion for directed verdict. In reviewing the denial of a directed verdict, we look to the legal sufficiency of the evidence. *Williams v. State*, 356 S.W. 3d 508, 522–23 (Tex. App.—Texarkana 2011, pet. ref'd); *Todd v. State*, 242 S.W.3d 126, 136 (Tex. App.—Texarkana 2007, pet. ref'd).

[3]Ramirez's brief incorrectly asserts that the trial court charged the jury on the law of transferred intent. Transferred intent is covered under Section 6.04 of the Texas Penal Code. TEX. PENAL CODE ANN. § 6.04 (West 2011). A transferred intent jury charge was not given to the jury.

2

we reject Ramirez' contention that the court's proper instruction amounted to a comment on the weight of the evidence.

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of aggravated assault against a public servant beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while keeping in mind that the credibility of witnesses is the sole province of the jury and that we "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson* 443 U.S. at 318–19); *see Ehrhardt v. State*, 334 S.W.3d 849, 857 (Tex. App.—Texarkana 2011, pet. ref'd).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

3

The indictment in this case alleged that Ramirez, individually and acting together with Thomas and Darius Williams, intentionally or knowingly threatened Fernandez by shooting a firearm at him while knowing that he was a public servant who was investigating an aggravated robbery. Ramirez individually committed the offense of aggravated assault against a public servant if (1) he (2) intentionally or knowingly (3) used or exhibited a deadly weapon[4] (4) to threaten Fernandez with imminent bodily injury (5) while knowing that Fernandez was a public servant (6) who was lawfully discharging an official duty. TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B) (West 2011).

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (West 2011). "A person is criminally responsible for an offense committed by the conduct of another if[,] . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). Also, a person is criminally responsible for the acts of another if

> in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

---

[4]A "deadly weapon" is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2012).

TEX. PENAL CODE ANN. § 7.02(b) (West 2011).[5]   Thus, Ramirez committed aggravated assault against a public servant as a party if he acted with intent to promote or assist Thomas and/or Williams in the commission of the offense by encouraging, aiding, or attempting to aid them in the aggravated assault of Fernandez.

The evidence was sufficient to convict Ramirez if he was physically present at the commission of the offense and encouraged its commission by words or other agreement. *Hartsfield*, 305 S.W.3d at 864 (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g)).  In determining whether the accused participated as a party, the fact-finder may "look to the events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to the prohibited act."  *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994) (op. on reh'g) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)); *see King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000); *Hartsfield*, 305 S.W.3d at 864.

In our opinion in cause number 06-11-00255-CR, we explained that the evidence was sufficient for the jury to find that Ramirez was one of three men who robbed Bonnie Lou's Game Room and that all three robbers, Ramirez, Williams, and Thomas, were acting together.  After the robbery, all three fled the scene in a silver car driven by Ramirez.  Officer Joseph Fernandez spotted the getaway car and attempted to pull it over.

Officer Jeffrey Reese testified that he saw Fernandez' patrol unit chasing the silver car "with his lights activated."  He testified, "[T]hey had already came [sic] to a stop at the

---

[5]While not contained in the State's indictment, an instruction based on Section 7.01(b) was included in the jury charge.

intersection of 276 and 34.  I heard gunshots at that time and proceeded up in the intersection.

And as I approached the intersection, I saw the deputy running to his vehicle."

As Fernandez was chasing the suspects he noticed "that they were talking to each other,

kind of . . . panicking."  After the vehicle stopped, Fernandez testified:

> The passenger, front passenger of the vehicle jumped out of the vehicle -- jumped out and shot.  Before he jumped out, I had opened my car door. . . . It was a black male.
>
> The only thing I remember is blue gloves, and he had a bag in his hand. And as he jumped out, he was coming back towards my vehicle, and immediately, as soon as he turned around towards my vehicle, he pointed his arm up at me, and there -- I think what appeared to be a gun and opened fire.
>
> I dove from my vehicle, stepping out.  I think I remember shooting one round . . . but he continued shooting at me.  I crawled on my hands and knees to the back of my car. . . . The car was still in drive because I didn't have time to put it in park.
>
> I turned over and sat on my butt, and immediately thinking he was right behind me; he wasn't.  I had saw my taillights were glaring on an object that appeared to be a man walking towards me with a gun pointed at my head.
>
> I lifted my arm and shot until he collapsed.  And then I waited until he was -- until what I thought he was subdued.

Fernandez testified that Thomas was the shooter and was carrying a bag of money and a

Winchester .380 caliber gun.   Thomas was killed by Fernandez' bullets.  Concerned that the

other passengers in the car could have weapons, Fernandez "got up and chased the car, the

suspect car, and shot at the car."  It sped off.

Reese saw the "small sedan turn and go towards Greenville."  He followed the suspect

vehicle at "94 miles an hour" with lights and sirens activated.  Another unit, driven by Officer

David Wilson, joined the chase. Eventually, Trooper Jay E. Simpson "deployed stop sticks" that "punched" the tires of the suspect's vehicle. The vehicle came to a stop after a few miles, and Reese commanded the occupants to exit the vehicle.

Ramirez testified that he had no idea Thomas was going to get out and shoot at Fernandez. Ramirez stated he continued driving the getaway car because Fernandez was shooting at the car.[6] The jury was free to reject Ramirez' self-serving testimony.

It was already established that Ramirez was an active participant in the aggravated robbery at the game room -- Ramirez drove the getaway car. Fernandez testified that he noticed the occupants of the vehicle speaking to each other. Thereafter, the video recording from Fernandez' patrol car established that Ramirez stopped at the intersection just long enough to allow Thomas to exit the car with his gun in hand. Ramirez sped off after Thomas was shot. The jury could infer that Ramirez remained at the intersection for a brief period so that he could transport Thomas in the event Thomas was successful in shooting Fernandez.

Under Section 7.02(a)(2) of the Texas Penal Code, the jury could have found beyond a reasonable doubt, that Ramirez knew Fernandez was a police officer who was discharging his official duty to apprehend the game room robbers and that Ramirez encouraged, aided, or attempted to aid Thomas in intentionally or knowingly threatening Fernandez with imminent bodily injury by using a deadly weapon. Under Section 7.20(b) of the Texas Penal Code, the jury could have also found Ramirez responsible for Fernandez' assault since it determined that Ramirez was involved in a conspiracy to rob the game room. They could have decided that

---

[6]Ramirez also told the jury that he did not conspire with anyone to rob the game room.

7

Fernandez' assault was committed by Thomas, a co-conspirator, that the assault was committed in furtherance of escape from the robbery, and that the assault should have been anticipated as a result of carrying out the robbery, especially when Thomas exited the vehicle at the intersection with a gun. Thus, Ramirez would have been liable for Fernandez' assault. We find the evidence sufficient to establish that Ramirez was a party to aggravated assault of a public servant.

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:     November 7, 2012
Date Decided:       November 27, 2012

Do Not Publish