# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00519-CR

**Gus Barron, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
NO. D-1-DC-10-302618, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Gus Barron guilty of two assault offenses arising from the same altercation with a family member. *See* Tex. Penal Code § 22.01(b)(2), (b-1). The trial court derived the two counts of the charge from separate paragraphs of an indictment that made no reference to counts. Count I of the charge—the standard assault charge—alleged that Barron caused bodily injury to A.G. by striking, grabbing, and throwing her with his hands. *See id.* § 22.01(a)(1). Count II of the charge—the strangulation charge—alleged that Barron impeded A.G.'s normal breathing by applying pressure to A.G.'s neck and throat with his hands. *See id.* After finding that Barron had a previous conviction, the jury assessed punishment at eight years' confinement for the assault charge and sixteen years' confinement for the strangulation charge.

In six issues on appeal, Barron contends that his convictions violate double-jeopardy prohibitions, that the trial court erroneously admitted hospital records and expert testimony about the behavior of victims, that the trial court erroneously let the State amend the indictment after the

trial began, and erroneously failed to instruct the jury on the lesser-included offense of misdemeanor assault. We will sustain Barron's double-jeopardy issue in part, reverse and dismiss his conviction for the standard assault charge, and affirm his conviction for the strangulation charge.

## BACKGROUND

A.G. and Barron lived together—she called him her common-law husband. According to A.G., this incident arose from her discussion with Barron about the previous termination of their parental rights to their three children. She testified that she hit Barron first, then they exchanged punches, and eventually Barron squeezed her neck with his hands hard enough to leave visible scratches and bruising. A.G. said that the altercation moved outdoors and attracted the attention of their neighbors. Afterwards, she went with a neighbor to get a towel from the neighbor's home.

The neighbor testified that A.G. knocked on her door, crying and breathing heavily with a bloodied face. The neighbor took A.G. into her home and called 911. Barron then started yelling and banging on the neighbor's window. Barron appeared angry and had a "pretty small" cut on his bottom lip. A.G. told her neighbor that Barron had hit her with his fist and choked her to the point that she was still having difficulty breathing. The neighbor said she saw a cut over A.G.'s eye and marks around her neck.

When Austin Police Department officers arrived, Barron was gone. A.G. told them that Barron "assaulted her, hit her multiple times, and then also choked her to the point where she almost lost consciousness." The officers called paramedics, who took A.G. to a hospital where she

2

received stitches for the laceration to her head and pain medication. After A.G. left, the officers photographed the interior of A.G.'s home.

Before trial, A.G. filed a signed affidavit of non-prosecution in which she asked prosecutors to drop the charges arising from the altercation. The State subpoenaed A.G. to secure her testimony and, when she failed to appear in court, the trial court issued a writ of attachment. Law enforcement officials brought A.G. to the trial. At trial, A.G. was uncooperative and openly hostile toward the State. She did testify that she "guessed" she was defending herself every time she hit Barron. The State introduced the testimony of the witnesses from the scene who testified as described above and said that, immediately after the assault, A.G. did not mention that the altercation was mutual combat.

The State also introduced, over Barron's objection, A.G.'s medical records showing that A.G. received sutures for a cut to her head. The State also called Gail Rice, an expert witness who testified about domestic assault victims' unwillingness to cooperate with criminal prosecutions. She explained that victims often call for assistance, but then become ambivalent or resistant about talking to authorities about their experiences with violence. Barron did not call any witnesses.

The jury found Barron guilty of both the standard assault charge and the strangulation charge.

**DISCUSSION**

In six issues on appeal, Barron argues that the trial court erred by: (1) punishing him for two assault offenses based on a single-count indictment; (2) not requiring the State to elect between the different manner and means of committing assault; (3) admitting hospital records in

3

violation of his right to confront the witnesses against him; (4) admitting expert testimony regarding the typical behavior of victims of family violence; (5) allowing the State to amend the indictment after the trial commenced; and (6) failing to instruct the jury on the lesser-included offense of misdemeanor assault.

**Two convictions for single-count indictment not permitted**

In his first issue, Barron argues that the trial court erred in rendering two judgments of conviction based on two paragraphs within a single-count indictment. The State concedes error in the dual convictions and requests that we dismiss the conviction for the standard assault charge because it carries the lesser sentence. Barron asserts that the conviction for the strangulation charge should be reversed because it appeared second in the indictment.

Because one count in an indictment alleges a single offense, an indictment cannot authorize more convictions than there are counts, and there can be only one conviction per count. *Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007); *see also* Tex. Code Crim. Proc. art. 21.24(a). A trial court errs by rendering multiple judgments of conviction based on separate paragraphs in a single count. *See Sledge v. State*, 262 S.W.3d 492, 495 (Tex. App.—Austin 2008, no pet.). Such error is harmful because it violates a defendant's constitutional rights to due-process notice and to a grand jury screening of the charges against him. *Martinez*, 225 S.W.3d at 555. The trial court erred by rendering two judgments of conviction based on the single-count indictment.

When a judgment includes multiple convictions for different paragraphs in a single indictment, the general remedy is to affirm the conviction for the most serious offense—i.e., the offense with greatest sentence assessed—and set aside the other convictions. *See Ex parte Cavazos*,

203 S.W.3d 333, 337 (Tex. Crim. App. 2006). We use the order of allegations in the indictment only if we cannot tell which is the more serious offense by reference to the punishment.[1] *Fowler v. State*, 240 S.W.3d 277, 282 (Tex. App.—Austin 2007, pet. ref'd). Because the jury assessed a longer sentence for the strangulation charge, we will affirm it and dismiss Barron's other conviction for standard assault.

We sustain Barron's first issue in part by dismissing his conviction for the less serious offense. We affirm Barron's conviction for the strangulation charge and reverse his conviction for the standard assault charge. In light of this determination, we will address Barron's remaining points of error only with respect to his conviction for the strangulation charge.

**State not required to elect manner and means**

In his second issue, Barron asserts that the trial court erred in denying his pretrial "request for the State to make an election" as to the manner and means by which he committed the alleged assaults. At trial, Barron filed a motion to sever in which he requested separate trials for the standard assault charge and the strangulation charge under Tex. Penal Code § 3.04. On appeal, Barron argues that his motion to sever also constituted a motion for election, and thus the State was required to elect the manners in which it alleged he committed each assault. He claims that, because the indictment alleges that he impeded A.G.'s breathing *and* blood circulation, he was not given notice of whether the State would prove both methods of the assault or only one. He concedes that the strangulation jury charge asked only about impeding A.G.'s breathing, but contends that its

---

[1] We also note that the jury charge presented the strangulation charge first and the jury answered the jury questions in that same order.

5

reference to the indictment—which alleged strangulation by means of impeding breathing *and* blood flow—impermissibly allowed the jury to convict him without a unanimous verdict on the means of strangulation. Barron also asserts that the improper presentation of two different means of assault created uncertainty how the jury might have sentenced him had there been only one question.

Assuming without deciding that this issue was properly preserved, we find that the record reflects that Barron was not entitled to an election. Generally, the State is not required to elect to proceed on only one means of committing a single offense. *See generally Fowler*, 240 S.W.3d at 280. The State nevertheless sought a jury charge on only one means of strangulation—impeding the breathing—and the trial court did not err by permitting that.

It is well settled that, although the indictment may allege different methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive. *See Leal v. State*, 303 S.W.3d 292, 297 (Tex. Crim. App. 2009). Barron had notice that the jury could properly convict him for impeding either A.G.'s breathing or blood circulation, despite the fact that the indictment alleged these methods in the conjunctive. *Id.*

Most important, the jury charge did not improperly permit a less-than-unanimous verdict. The jury instructions included only a description of strangulation by impeding the breathing and the jury question made it clear that the jury was to decide whether Barron committed the offense of "Felony Assault Family Violence by Impeding the Breathing, as alleged in the indictment"—not strangulation by whatever means alleged in the indictment. Even if the jury charge could be read to permit conviction for strangulation by impeding breathing *or* blood circulation, the jury need not unanimously agree on the specific method of committing the offense because they define a

6

single offense capable of being committed in more than way. *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006); *See* Tex. Penal Code § 22.01(b-1)(3).

We also find no error in the trial court's presentation of separate punishment questions for the separate offenses. Rather than presenting confusion or error, that formulation in the jury charge made clear what punishment the jury found appropriate for which of the different means of committing the assault. The sixteen-year sentence was unequivocally prompted by Barron's impeding of A.G.'s breathing and stands with that conviction on that evidence.

**No harm from admission of medical records**

In his third issue, Barron asserts that the trial court's admission of A.G.'s hospital records violated his constitutional right to confront the witnesses against him. *See* U.S. Const. amend. VI. At trial, Barron objected to the admission of A.G.'s medical records on grounds that they contain hearsay statements from medical professionals who he did not confront. Before the State could respond to Barron's objection, the trial court stated that it would review the medical records and "rule at a later time." When the State later reurged the admission of the medical records, the trial court overruled Barron's objection and admitted the records. On appeal, Barron asserts that the trial court's admission of the medical records without any showing by the State that they were admissible violated the Confrontation Clause.

The Confrontation Clause to the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Generally, courts have construed the Confrontation Clause to prohibit prosecutors from admitting "testimonial" out-of-court statements against a defendant unless the

7

defendant has been afforded the opportunity to cross-examine the declarant. *See De la Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008) (citing *Crawford v. Washington*, 541 U.S. 36, 59 (2004)). A statement is testimonial "when the surrounding circumstances objectively indicate that the primary purpose" for the declarant making the statement was "to establish or prove past events potentially relevant to later criminal prosecution." *Id.* Once the defendant raises a Confrontation-Clause objection, the burden shifts to the State to prove either (1) that the proposed statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause or (2) that the statement does contain testimonial hearsay but is nevertheless admissible. *Id.* at 680–81 (citing *Crawford*, 541 U.S. at 59).

Assuming, without deciding, that the trial court erred in admitting the medical records without requiring the State to prove their admissibility, we will assess whether that error was harmless. When, as here, the error implicates the Confrontation Clause, a constitutional harm analysis is appropriate. *See Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010). We must reverse the judgment unless we determine beyond a reasonable doubt that the potential error did not contribute to Barron's conviction or punishment. *See* Tex. R. App. P. 44.2(a); *Langham*, 305 S.W.3d at 582. The court of criminal appeals has identified the following non-exclusive list of factors to consider in determining whether violations of the Confrontation Clause are harmless:

> 1) how important was the out-of-court statement to the State's case; 2) whether the out-of-court statement was cumulative of other evidence; 3) the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points; and 4) the overall strength of the prosecution's case.

*Scott v. State*, 227 S.W.3d 670, 690–91 (Tex. Crim. App. 2007).

8

Barron notes that the medical records indicate that A.G.'s injuries were the result of an alleged assault.[2] Barron asserts that these statements imply that A.G. told the declarants that she had been assaulted and that the declarants believed that her injuries were consistent with assault. The medical reports do not state who alleged that the injuries were due to assault, but even if they did, the allegations of assault in the reports are cumulative of the other testimony admitted at trial from A.G. herself and persons who saw her immediately afterwards. A.G.'s neighbor, the officer who first arrived on the scene, and the paramedic who treated A.G. all testified about the severity of A.G.'s injuries and stated that A.G. told them that her injuries were the result of Barron's assault. This testimony was corroborated by the photographs of A.G.'s injuries taken shortly after the assault. Furthermore, the State only briefly referenced the medical records in its closing argument, noting that they showed A.G. received sutures and a tetanus shot. Finally, the overall

---

[2] The subject of issue three, State's Exhibit No.10, is a collection of records from the treating hospital. The triage report and the Emergency Room Nursing Report both state "Chief Complaint: ALLEGED ASSAULT." The nursing report goes on to state, "Abuse history: patient reports physical abuse by significant other against patient." A separate document entitled Emergency Room Report states

> Chief Complaint—ALLEGED ASSAULT. Location of injuries----head, face and neck. This occurred just prior to arrival.

> The patient sustained multiple moderate blows with a fist. She was allegedly pushed (STRUCK HEAD AGAINST FLOOR). She was allegedly choked with hands. Occurred at home.

The remainder of the reports discuss observations, treatments, and instructions given to the patient.

State's Exhibit No. 10 also includes the EMS report that is State's Exhibit No. 6 which is not the subject of this issue. The EMS records state in a section entitled Response Info that the "nature of call" was "assault." In the History section, the record states that the cause of injury is "Assault/Battery."

strength of the State's case was substantial. The only evidence that arguably supported Barron's defense was A.G.'s testimony that the alleged assault was actually mutual combat that she initiated. However, A.G. contradicted herself on several occasions, and her testimony was either undermined or directly contradicted by the remaining witnesses. We conclude beyond a reasonable doubt that the objected-to characterization of the injuries as assault-related did not contribute to the conviction or punishment.

We conclude beyond a reasonable doubt that any error in admitting the medical records did not contribute to Barron's conviction or punishment and was harmless. *See* Tex. R. App. P. 44.2(a); *Langham*, 305 S.W.3d at 582.

**No harm from admission of expert testimony**

In his fourth issue, Barron asserts that the trial court erred in admitting Gail Rice's testimony as an expert concerning the common dynamics between domestic-abuse victims and law enforcement. Specifically, Barron asserts that Rice's testimony was unreliable and irrelevant because Rice did not interview A.G. or review the State's file before trial, and therefore she could not testify about the specifics of this case. Barron asserts that Rice's testimony converted A.G.'s reluctance to testify from a defense-friendly concession that his offensive conduct was justified by self-defense to a prosecution-friendly implication that the reluctance was driven by Barron's guilt.

For efficiency, we choose to address whether any error in the admission of Rice's testimony was harmful to Barron. The erroneous admission of expert testimony is non-constitutional error. *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). We must disregard any error unless it affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *King v. State*,

10

953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble*, 330 S.W.3d at 280 (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). If the improperly admitted evidence did not influence the jury or had but a slight effect on its deliberations, such error is harmless. *Id*. We examine the entire trial record and calculate, to the extent possible, the probable impact of the error on the rest of the evidence. *Coble*, 330 S.W.3d at 280. Important factors in considering non-constitutional error are "the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In analyzing the erroneous admission of expert testimony, we may consider, among other things: (1) the strength of the evidence of the appellant's guilt; (2) whether the jury heard the same or substantially similar admissible evidence through another source; (3) the strength or weakness of an expert's conclusions, including whether the expert's opinion was effectively refuted; and (4) whether the State directed the jury's attention to the expert's testimony during arguments. *See Coble*, 330 S.W.3d at 286–88.

Rice testified generally about the dynamics of relationships in which domestic violence occurs. She talked about the behaviors that often occur in such relationships and how victims interact with the police. She explained that victims of domestic violence often call 911 during an assault out of immediate fear, but then become reluctant to cooperate in subsequent criminal prosecutions because they are afraid of retaliation by their assailants or believe that they can predict and control the degree of abuse in the future. She stated plainly that she had not interviewed anyone or read the files of the case, and she did not opine anything about A.G. specifically.

11

Given the overwhelming evidence that Barron caused A.G.'s injuries, the key dispute at trial was whether self-defense might have justified his actions. Rice's testimony did not bear directly on self-defense, but required the jury to reason that A.G.'s reluctance to testify was driven by fear or devotion, that her fear or devotion caused her to fabricate her testimony that she initiated the physical altercation, and that her actions in fact justified Barron's response. The jury heard testimony that A.G. struck Barron and that he had a small cut on his lip. The jury also heard testimony and saw pictures of A.G. after the beating. The jury did not hear other testimony explaining why A.G. might not want to prosecute or testify against Barron, but it heard testimony that A.G. did not assert that she started the altercation in its immediate aftermath. The jury also heard A.G.'s testimony that she was not afraid of Barron. Rice admittedly did not base her testimony on any facts from this case. Both prosecutors referred to Rice's testimony in closing. The first prosecutor to speak stated, "there's no surprises in this criminal justice system that a victim does not want to see the person who is accused, who hit her, not prosecuted. It is not a surprise to us." The second prosecutor stated that Rice "explained that it is common not only for the victims of assault family violence to be uncooperative, but it is common for them to lie, shade the truth and lie to help the defendant." She then argued that, even if the jury believed that A.G. threw the first punch, they should conclude that Barron's response was too disproportionate to qualify as self-defense.

Even if the trial court erred by admitting Rice's testimony, we conclude that it did not affect Barron's substantial rights. Rice's testimony was not tied to A.G., was not tied to the elements of this offense, and related to self-defense at best tenuously by questioning A.G.'s motivation in not wanting to testify. The weight of the evidence supporting the verdict, including the rejection of self-

defense, overwhelmed any improper effect of Rice's testimony to such a degree that any error in the admission of Rice's testimony was harmless.

**No error in alteration of the indictment**

In his fifth issue, Barron asserts that the trial court erred by deleting language from the indictment after the trial began. Within the enhancement paragraphs, the indictment originally alleged that Barron had previously been convicted of two offenses involving family violence in "County Court at Law #4 of Travis County, Texas." During the trial, prosecutors realized that these prior convictions actually occurred in County Court at Law #7, not #4. The State requested that the trial court strike any reference to the court number. Over Barron's objection, the trial court granted the State's request and deleted the words "County Court at Law #4" from the indictment. On appeal, Barron asserts that this deletion was an impermissible amendment to the indictment in violation of article 28.10 of the Texas Code of Criminal Procedure.

Once trial begins, the State may only amend the indictment for matters of form or substance if the defendant does not object. *See* Tex. Code Crim. Proc. art. 28.10(b). Not all alterations to an indictment constitute amendments, however, and certain allegations may be abandoned by the State without implicating article 28.10. *See Eastep v. State*, 941 S.W.2d 130, 132–33 (Tex. Crim. App. 1997).[3] The court of criminal appeals has recognized three kinds of

---

[3] This Court previously noted that the "continuing validity of *Eastep*'s discussion of the subject of surplusage in an indictment is open to question in light of the opinion in *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001) . . . ." *Scoggins v. State*, No. 03-04-00555-CR, 2006 Tex. App. LEXIS 3529, at *4 n.2 (Tex. App.—Austin April 27, 2006, pet. ref'd). However, the court of criminal appeals has since referred to the analysis of surplusage in *Eastep* with approval, and thus, we conclude that it remains good law. *See Balentine v. State*, No. PD-1102-11, 2012 Tex.

language in an indictment that can be abandoned without amounting to an amendment: (1) allegations of one or more alternative means of committing the alleged offense, (2) allegations of a greater offense than remains in the indictment, and (3) surplusage. *Id*. at 133–35.

In this case, the State asserts that the language identifying the court number was merely surplusage, and thus its deletion did not constitute an amendment under article 28.10. *See Eastep*, 941 S.W.2d at 135. "Surplusage is unnecessary language not legally essential to constitute the offense alleged in the charging instrument." *Id.* Courts have held that, because it is not necessary to allege enhancement convictions with the same particularity as a charged offense, language identifying the particular court or date of a defendant's previous conviction is surplusage. *See Williams v. State*, 356 S.W.3d 508, 517 (Tex. App.—Texarkana 2011, pet. ref'd) (concluding exact date of prior conviction is surplusage); *Chavis v. State*, 177 S.W.3d 308, 311–12 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (concluding exact court number of prior conviction is surplusage). Thus, the State may abandon surplusage language which misstates specific facts, as long as the indictment provides adequate notice of the previous conviction that is being alleged. *See Williams*, 356 S.W.3d at 517; *Chavis*, 177 S.W.3d at 312.

The indictment in this case correctly lists the offenses, cause numbers, and dates of Barron's previous convictions for assault involving family violence. Therefore, the language identifying the court number for these convictions was surplusage, and the State could properly abandon that language without impermissibly amending the indictment within the meaning of the criminal code. *See* Tex. Code Crim. Proc. art. 24.10; *Eastep*, 941 S.W.2d at 135.

Crim. App. Unpub. LEXIS 899, at *4 n.4 (Tex. Crim. App. Sept. 12, 2012) (not designated for publication).

The trial court did not err by allowing the State to delete the court number from the enhancement portion of the indictment.

**No error in omission of instruction on lesser-included offense**

In his sixth issue, Barron asserts that the trial court erred in denying his request to instruct the jury on the lesser-included offense of misdemeanor assault. *See* Tex. Penal Code § 22.01(b) (classifying assault as Class A misdemeanor unless committed against certain victims in certain circumstances). Barron claims that because the indictment originally alleged the wrong court number for the previous-offense allegations, the jury could have concluded that the enhancement paragraphs were "not true" and thus Barron was guilty only of misdemeanor assault. *See id.* § 22.01(b-1)(2) (enhancing assault to second-degree felony when defendant has been previously convicted of family violence).

We review a trial court's ruling on a request for a lesser-included offense instruction for an abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). In order to show that he was entitled to a lesser-included offense instruction, Barron must satisfy the two-prong *Aguilar/Rousseau* test. *See Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005); *see also Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985). The first prong requires the court to determine whether the lesser offense actually is a lesser-included offense of the offense charged. *Hall*, 158 S.W.3d at 473 (citing Tex. Code Crim. Proc. art. 37.09).[4] The second prong asks whether the

---

[4] An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

15

record contains some evidence that would permit a rational jury to find that the defendant is guilty *only* of the lesser-included offense. *Id.*

Misdemeanor assault is a lesser-included offense of assault on a family member,[5] but Barron cannot show that there is more than a scintilla of evidence that would support a jury reasonably convicting him of assault, but finding that the State had failed to prove that he had been previously convicted of an offense involving family violence. *See Goad v. State*, 354 S.W.3d 443, 446–47 (Tex. Crim. App. 2011). Barron asserts that the jury could have noticed the variance between the allegation in the indictment that two of his convictions arose from County Court at Law #4 and the certified copies of conviction showing that he was convicted in County Court at Law #7 and reasonably could have found that he had not been previously convicted of an offense involving family violence, and thus he was only guilty of misdemeanor assault. We are not persuaded by his argument. The State abandoned the surplusage in the indictment before jury deliberations and the jury instruction did not reference the court numbers of Barron's previous assault convictions. Further, the indictment alleged that Barron had been previously convicted of felony assault, and the court, cause number, and date of that conviction all matched those in the certified copy of judgment.

---

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code Crim. Proc. art. 37.09.

[5] *See* Tex. Code Crim. Proc. art. 37.09(1); *see also* Tex. Penal Code § 22.01(b).

16

The record does not contain more than a scintilla of evidence from which a jury reasonably could have believed that Barron had not been convicted of a previous offense involving family violence.  Thus, Barron has failed to establish that he was entitled to an instruction on the lesser-included offense of misdemeanor assault, and the trial court did not abuse its discretion in denying Barron's request for a lesser-included-offense instruction.  Barron's sixth issue is overruled.

## CONCLUSION

Having sustained Barron's first issue, we reverse and dismiss the judgment of conviction and the punishment assessed for Count I.  We affirm all other aspects of the judgment of conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Henson, and Rose;
    Justice Henson not participating

Affirmed in part; Reversed and Dismissed in part

Filed:   July 26, 2013

Do Not Publish