

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00128-CR

_____

JOHNNY LEE HART, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Red River County, Texas
Trial Court No. CR03310

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Red River County jury convicted Johnny Lee Hart of family violence assault by occlusion, with a previous conviction for family violence, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b-3) (Supp.). After the jury found the State's punishment-enhancement allegations true, Hart was sentenced to life imprisonment. On appeal, Hart argues that (1) the trial court erred by allowing the victim to testify that Hart was previously imprisoned, (2) the trial court erred by allowing the State's expert to testify about the victim's truthfulness, and (3) his counsel rendered ineffective assistance by failing to object to allegedly inadequate notice of the State's punishment enhancement allegations.[1]

We find that, to the extent Hart preserved his claims, he suffered no harm from the trial court's evidentiary rulings. We also find that a silent record fails to support Hart's claim of ineffective assistance by his counsel. As a result, we affirm the trial court's judgment.

## I.    Factual Background

As a part of its burden in this case, the State was required to prove that Hart had previously been convicted for family violence. *See* TEX. PENAL CODE ANN. § 22.01(b-3). As its first witness, the State called James Cole Sain, a lieutenant with the Lamar County Sheriff's Office, to prove the prior conviction. Sain testified, without objection, that Hart was convicted for assault causing bodily injury to a family member and, after violating his community supervision in 2007, was sentenced to confinement in the Collin County Jail.

---

[1]In companion cause number 06-23-00129-CR, Hart appeals his conviction for aggravated sexual assault on these same grounds.

The victim in this case, Amy Stearnes, testified that Hart involved himself in her life after she had ended a relationship with Larry Watson. Stearnes testified that, in March 2021, she and her children moved into an apartment next door to Hart's father, Jack Hart.[2] Jack told Stearnes that Hart liked her, but she was uninterested in a relationship with him. Even so, Stearnes testified that Hart invited himself to her apartment to take her on a "surprise date," but she refused.

Hart, who was a "[v]ery big guy," became upset at Stearnes's rejection, broke her dishes, "said he would not go back to prison[, and said] that he would hurt [Stearnes] and [her] kids." Because she was afraid and unable to make Hart leave, Stearnes said she stayed up all night with Hart talking to him. When Hart told Stearnes that she "would grow to love him," Stearnes knew she "was in major trouble."

The next morning, Stearnes asked Jack for help to get his son out of her apartment, but he declined. Stearnes went back to her apartment, where Hart "established what [her] role was going to be, that [she] was going to do what he said when he said." Stearnes said she was "afraid to argue." According to Stearnes, "[t]he next day [Hart] drank vodka from morning until evening" and had sex with Stearnes even though she told him that she did not want to. Stearnes said that Hart brought guns into the apartment and threatened to kill her or her children if she tried to leave.

Stearnes testified that she felt "trapped." She told the jury that she suffered verbal and physical abuse by Hart, who controlled her. Stearnes said that she was not allowed to use her

---

[2]Stearnes's biological son was eighteen. Stearnes was also co-parenting a young child, who was not her biological child, with Watson.

phone unless it was in front of Hart, which, coupled with Hart's threats, prevented her from obtaining assistance. In addition to the abuse, Stearnes testified that Hart would make her bathe him, brush his teeth, and undergo "sexual punishment." Stearnes testified that she was sexually assaulted by Hart repeatedly because "he took what he wanted."

Stearnes said she was forced by Hart to move out of the apartment complex because "people were in [their] business." The abuse giving rise to the indictments in Hart's companion case occurred in the new rental home. As for the incident comprising cause number 06-23-00129-CR, Stearnes testified that, on October 21, 2021, without her consent, Hart pulled her to the foot of the bed by her feet, pushed her face into a pillow, and anally raped her while she "cried out." After this sexual assault, Stearnes said that Hart "made [her] get a rag and wipe from under his scrotum, [her] blood and feces" and that she "had to bathe him before [she] could clean [her]self up."

On October 23, Stearnes testified about the incident that led to Hart's arrest and the indictment in this case. She testified that Hart choked her and lifted her by the neck but let her go when Hart heard her older son walking toward the argument. She testified that "[Hart] was squeezing his hands to the point to where [her] eripheral [sic] vision started going gray." She continued, "I couldn't lift my arms to fight, I couldn't do anything except kick my feet. . . . I couldn't breathe at all." Stearnes, who believed she was going to die during the choking, said she told Hart, "[Y]ou're going to jail, you put your hands on me," to which he responded, "I'm not going back to prison."

4

That same day, Watson called Stearnes to see if it was a good time to drop off a stove for her. According to Watson, he had heard someone yelling and cursing at Stearnes over the phone. When Watson arrived, he "noticed the red marks around [Stearnes's] neck," which "disturbed" him. According to Watson, Stearnes said Hart had "picked her up off the ground choking her." Watson immediately wanted to call the police, but Stearnes protested because of Hart's threats to hurt her and her children. Watson said Hart instructed him to leave after he dropped off the stove, and he complied.

Stearnes became particularly afraid for her life after the choking and took pictures of herself depicting the red marks on her neck, which were shown to the jury. On October 24, Stearnes traveled to her mother's house with the children and immediately went to the police. She was later granted a protective order against Hart. Stearnes testified that she was in counseling for trauma and abuse and received mental health treatment. After Hart's arrest, Stearnes moved in with Watson and later married him.

Makesha Parrish, a licensed professional counselor, reviewed the evidence in the case and met Stearnes on the day before trial for an interview that lasted an hour and a half. Although she did not treat Stearnes, Parrish testified, without objection, that her review of the case led her to conclude that Stearnes was "[o]ne hundred percent" in an abusive relationship with Hart. Parrish testified that she learned Stearnes "was being forced to brush [Hart's] teeth, to bathe him after he had raped her, after he had sodomized her," and to wipe Hart's "behind after [he] used the restroom," which was "completely dehumanizing." Parrish testified that Stearnes experienced panic attacks, anxiety, and insomnia and felt as if she was "constantly choking."

5

She added that Stearnes took five showers a day "[t]o get rid of the feeling of disgust, to get rid of the feeling of being used and being discarded and being treated like trash." According to Parrish, Stearnes said she could not be intimate with her husband without vomiting due to "all the abuse that [she had] endured." Parrish said that Hart took "[c]omplete advantage [of] and complete control" over Stearnes.[3]

After hearing this evidence, the jury convicted Hart of family violence assault by occlusion, with a previous conviction for family violence.

## II.  Hart Suffered No Harm from the Trial Court's Evidentiary Rulings

Hart's first two points of error challenge the trial court's evidentiary rulings. He complains that the trial court erred by allowing Stearnes to repeatedly testify, over objection, that Hart was previously incarcerated. Because the State had already introduced similar testimony through Sain, without objection, we find that Hart was unharmed. Hart also complains that the trial court erred by allowing Parrish to testify about Stearnes's truthfulness, but we find that two of the three grounds argued by Hart are unpreserved. As for the preserved ground, we again conclude that Hart was unharmed.

### A.  Standard of Review

"We review a trial court's decision to admit . . . evidence for an abuse of discretion." *Flowers v. State*, 438 S.W.3d 96, 103 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010)). "Abuse of discretion occurs only if the

---

[3]Parrish testified that "only [thirty-three] percent of women" report their abusers because of victim shaming and because "the individual is often held in jail maybe for [twenty-four] hours and then released and then they are now angry and they come back."

decision is 'so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g)). "We may not substitute our own decision for that of the trial court." *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)). "We will uphold an evidentiary ruling if it was correct on any theory of law applicable to the case." *Id.* (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

If we conclude the trial court erred, we must move to a harm analysis. Because the alleged errors here are non-constitutional, we must disregard them unless they affected Hart's "substantial rights." TEX. R. APP. P. 44.2(b). Under this standard, "an error is reversible only when it has a substantial and injurious effect or influence in determin[ing] the jury's verdict." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018).

**B.      Hart Was Unharmed by the Victim's References to His Prior Incarceration**

Hart objected to each of Stearnes's references to his prior incarceration, including that Hart said, "I'm not going back to prison." "[U]ninvited and unembellished reference[s] to [an] appellant's prior incarceration [are] . . . inadmissible." *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *see Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992); *McBurnett v. State*, 629 S.W.3d 660, 663 (Tex. App.—Fort Worth 2021, pet. ref'd).

Even so, "[a]n error in the admission of evidence is cured where the same evidence comes in elsewhere without objection." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *see Josey v. State*, 97 S.W.3d 687, 698 (Tex. App.—Texarkana 2003, no pet.). Here,

7

before Stearnes's testimony, Sain had already introduced Hart's prior conviction for family violence and had established that Hart was incarcerated as a result. Because the jury was already aware of evidence of Hart's prior incarceration, which came in without objection, we find that Stearnes's later references to his incarceration did not affect his substantial rights. As a result, we overrule Hart's first point of error.

### C. Hart Failed to Preserve Two of Three Complaints to Parrish's Testimony

There was no objection to Parrish's direct testimony. During cross-examination, Hart established that Parrish had seen women who injured themselves and either called the police or threatened to do so to control their husbands or boyfriends. Hart also cross-examined Parrish about the lack of any medical records for Stearnes. Even so, Hart, who had made no opening statement, had not questioned Stearnes's veracity at the time of Parrish's testimony.[4]

After Hart cross-examined Parrish, the State asked on re-direct whether there were "[a]ny indication[s]" or "red flags" during Parrish's interview with Stearnes. Parrish said, "No. There was no indication that I thought she was lying or being untruthful about the abuse." Hart objected to Parrish's answer on the ground that "it [went] to the credibility issue and the credibility is a question for the jury." The State responded, "I believe it's invited response, Judge, from the previous questions that he asked," and the trial court overruled the objection.

On appeal, Hart argues that the trial court erred by overruling his objection because (1) "pursuant to Texas Rule of Evidence 702, an expert may not offer a direct opinion on the

---

[4]"Generally, a witness's character for truthfulness may be rehabilitated with 'good character' witnesses only when the witness's general character for truthfulness has been attacked." *Michael v. State*, 235 S.W.3d 723, 726 (Tex. Crim. App. 2007).

truthfulness of a complainant's allegations,"[5] (2) Parrish's testimony "unfairly buttressed the victim's allegations against Hart," and (3) under Rule 608, "the victim's character for truthfulness had to have been challenged."[6] The State argues that Hart's appellate arguments do not comport with his trial objection, and in part, we agree.

A "point of error on appeal must comport with the objection made at trial." *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); *see Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005). Under Rule 33.1 of the Texas Rules of Appellate Procedure, the objecting party must "state[] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A).

"The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; [and] (2) to give opposing counsel the opportunity to respond to the complaint." *Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009).

---

[5]Rule 702 states, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702.

[6]Rule 608 states, in relevant part,

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

TEX. R. EVID. 608.

9

As explained in *Resendez*,

> Although there are no technical considerations or forms of words required to preserve an error for appeal, a party must be specific enough so as to "let the trial judge know what he wants, why he thinks himself entitled to it, and do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."

*Id.* at 312–13 (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)).

Here, Hart's complaint that Parrish's testimony "[went] to the credibility issue" and that "credibility is a question for the jury" failed to apprise the trial court that he was objecting because Parrish was an expert witness subject to Rule 702. The objection also raised no issue related to bolstering. As a result, we find these complaints unpreserved.

### D. Because of Parrish's Direct Testimony, Hart Cannot Show Harm

To the extent the context around Hart's objection, which included the State's response that Hart had invited such testimony, was sufficient to raise an issue under Rule 608, we overrule it, even assuming error.

In deciding whether Hart's substantial rights were affected by Parrish's testimony, we look to "(1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error." *Auld v. State*, 652 S.W.3d 95, 111 (Tex. App.—Texarkana 2022, no pet.) (quoting *Gonzalez*, 544 S.W.3d at 373). Again, we must also consider whether the "same evidence" was introduced "elsewhere without objection," thereby curing any error. *Valle*, 109 S.W.3d at 509. If we have "fair assurance from an examination of the record as a whole that the error did not

influence the jury, or had but a slight effect," we will not overturn the conviction. *Auld*, 652 S.W.3d at 111 (quoting *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021)).

Applying those factors to the evidence in this case, we conclude that Parrish's comment was harmless, even though Stearnes's credibility was at issue. First, Parrish's comment came after her direct testimony, during which she was asked, "Can you tell the jury, in your opinion, was [Stearnes] in a really abusive relationship with the defendant in this case?" Parrish responded, without objection, "One hundred percent." She also testified that Hart took "[c]omplete advantage and complete control" of Stearnes, who Parrish described as "clearly terrified and scared." As a result, similar evidence suggesting Parrish's belief of Stearnes's report was already before the jury. This mitigates heavily against a finding of harm. *See Valle*, 109 S.W.3d at 509.

Second, there was ample evidence of Hart's guilt. Stearnes testified in detail about Hart's abuse, and the jury was able to independently assess her credibility during her testimony. Stearnes's testimony about the choking was supported by photographic evidence, as well as by Watson's testimony. The jury also heard that a trial court had granted Stearnes a protective order against Hart.

Lastly, although the State referenced Parrish's belief during closing argument,[7] the trial court instructed the jury that they were the "exclusive judges . . . of the credibility of the . . . witnesses, and of the weight to be given their testimony."

---

[7] The State said, "You think about what the expert said, Makesha Parrish. She believed she went through this traumatic event."

11

After reviewing the entire record, which included similar, unobjected-to statements suggesting Parrish's belief of Stearnes's allegations, we conclude that Parrish's later testimony saying she saw no indications of "lying or being untruthful" during the interview had, at most, a slight effect. As a result, we overrule Hart's second point of error.

**III.    The Silent Record Does Not Support Hart's Ineffective Assistance of Counsel Claim**

The State's indictment contained one punishment-enhancement allegation for a felony offense committed by Hart in 2011. In addition, the State provided its notice of intent to introduce Hart's 2005 felony conviction for kidnapping. Section 12.42 of the Texas Penal Code provides enhanced punishment for habitual offenders by stating,

> [I]f it is shown on the trial of a felony offense other than a state jail felony . . . that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years.

TEX. PENAL CODE ANN. § 12.42(d). As a result, the trial court's punishment charge to the jury notified the jury that, if it found Hart had previously committed the two felony offenses as alleged, Hart's minimum punishment would be twenty-five years' imprisonment. *See id.*

In his last point of error, Hart complains that his counsel rendered ineffective assistance by failing to object when the "State did not allege the qualifying timing of those prior felony convictions as required by Texas Penal Code section 12.42(d)." We find that the silent record fails to support Hart's claim of counsel's ineffectiveness.

### A. Standard of Review

"As many cases have noted, the right to counsel does not mean the right to errorless counsel." *Lampkin v. State*, 470 S.W.3d 876, 896 (Tex. App.—Texarkana, 2015, pet. ref'd) (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)). "In order to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland* . . . ." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009) (orig. proceeding)). The first prong requires a showing "that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "The second *Strickland* prong, sometimes referred to as 'the prejudice prong,' requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." *Lampkin*, 470 S.W.3d at 897 (citing *Strickland*, 466 U.S. at 694). "A failure to make a showing under either prong defeats a claim for ineffective assistance." *Id.* (citing *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003)).

The requirement of the first *Strickland* prong can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. As a result, the Texas Court of Criminal Appeals has said, "Trial counsel 'should ordinarily be afforded an opportunity to explain his actions before being'" found ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

When an appellate record is silent on why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not—reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). This is because allegations of ineffectiveness "must be firmly founded in the record." *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813). When a party raises an ineffective assistance of counsel claim for the first time on direct appeal, "the defendant must show that 'under prevailing professional norms,' *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052, no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do, *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005)." *Auld v. State*, 652 S.W.3d 95, 112 (Tex. App.—Texarkana 2022, no pet.).

**B.     Analysis**

Here, the record is silent on why counsel did not object to the State's punishment enhancement notice. Even so, we can fathom good reasons for counsel's failure to object.

"It is well settled that it is not necessary to allege prior convictions for the purpose of enhancement with the same particularity which must be used in charging on the primary offense." *Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986); *see Williams v. State*, 356 S.W.3d 508, 517 (Tex. App.—Texarkana 2011, pet. ref'd). Even so, "the State must prove that the offense leading to the second conviction was committed after the first conviction became final." *Tomlin v. State*, 722 S.W.2d 702, 705 (Tex. Crim. App. 1987).

14

Here, the State's notice alleged that the 2005 kidnapping conviction resulted in a sentence of three years' imprisonment. Counsel was also provided with discovery, which included a judgment of conviction showing that Hart's three-year sentence for kidnapping was imposed on April 27, 2005. As a result, counsel could have chosen not to object because he knew that the kidnapping conviction was final before the offense leading to the 2011 felony conviction. Moreover, nothing showed that counsel was surprised by the habitual-offender allegation. During voir dire, Hart's counsel informed the trial court, "[Hart is] aware that there are two paragraphs on his indictment - - or they're enhanced where if he's found guilty and those are found true beyond a reasonable doubt his minimum sentence is 25 years."

We find that the silent record does not support Hart's claim that his counsel rendered ineffective assistance. As a result, Hart cannot meet the first *Strickland* prong. We overrule Hart's last point of error.

## IV. Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted: April 3, 2024
Date Decided: April 24, 2024

Do Not Publish

15